### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION
_____

| | |
|---|---|
| **DENNIS HAMMOND and** | ) |
| **SHELIA HAMMOND** | ) |
| 110 Clarke Avenue | ) |
| Palm Beach, Florida 33480 | ) |
| | ) |
| **Plaintiffs,** | ) |
| | )     **Civil Action No._____** |
| v. | ) |
| | ) |
| **MUELLER PROST LC** | ) |
| Serve:  Guy N. Brandt, Registered Agent | ) |
| 8000 Maryland Avenue, Suite 1550 | )     **JURY TRIAL DEMANDED** |
| Clayton, Missouri 63105 | ) |
| | ) |
| **PINE LAKE CORPORATION D/B/A/** | ) |
| **FINANCIAL SUPPORT SERVICES** | ) |
| Serve:  Edward F. Reilly, Reg. Agent, | ) |
| 8000 Maryland Avenue, Suite 320 | ) |
| Clayton, Missouri 63105 | ) |
| | ) |
| **AMBER LEWIS a/k/a** | ) |
| **AMBER D. BLACK a/k/a** | ) |
| **AMBER D. WOODWARD,** | ) |
| 2014 Iron Mountain Drive | ) |
| Festus, Missouri 63028 | ) |
| | ) |
| **MIDLAND STATES BANCORP, INC.** | ) |
| Serve:  Officer, Manager or Agent | ) |
| 7818 Bonhomme Avenue | ) |
| Clayton, Missouri 63105 | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### <u>COMPLAINT</u>

COME NOW Plaintiffs Dennis Hammond and Shelia Hammond ("Plaintiffs" and

"Hammonds"), by and through their undersigned counsel, and for their Complaint against

Defendants, state as follows:

## PARTIES

1.      Plaintiffs Dennis Hammond and Shelia Hammond are citizens and residents of Palm Beach, Florida.

2.      Defendant Mueller Prost LC ("Mueller Prost"), is a Missouri limited liability company, with a principal place of business at 7733 Forsyth Blvd., Suite 1200, Clayton, Missouri 63105, and is a citizen of the State of Missouri.  Mueller Prost's registered agent is Guy Brandt at 8000 Maryland Ave., Suite 1550, Clayton, Missouri 63105.

3.       Defendant Pine Lake Corporation d/b/a Financial Support Services ("FSS"), is a Missouri corporation with a principal place of business at 8515 Delmar Blvd., Suite 223, University City, Missouri 63125, and is a citizen of the State of Missouri.  FSS' registered agent is Edward F. Reilly at 8000 Maryland Ave., Suite 320, Clayton, Missouri 63105.

4.      Defendant Midland States Bancorp, Inc. ("Midland States"), is an Illinois corporation with its principal place of business in Effingham, Illinois, and is a citizen of the State of Illinois, doing business in the State of Missouri as Midland States Bank at numerous banking facilities located in the metropolitan St. Louis area, including a facility located at 7818 Bonhomme Avenue, Clayton, Missouri 63105.  Upon information and belief, Defendant Midland States acquired Heartland Bank in 2014, merged in 2015, has continued the operations of Heartland Bank, and is Heartland Bank's successor-in-interest.

5.      Defendant Amber Lewis a/k/a Amber D. Black a/k/a Amber D. Woodward ("Lewis"), upon information and belief, was and is an adult and individual resident and citizen of Missouri residing at 2014 Iron Mountain Dr., Festus, Missouri 63028.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

7.      The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b).  A substantial part of the events and conduct giving rise to the obligations, liabilities, breaches, and/or violations of law complained of occurred in or emanated from this District.  Venue is also proper in this District because the Defendants can be found in, reside in, have agents in, and/or transact business in this District.

## FACTS

9.      The Hammonds are loyal customers of Heartland Bank and have trusted Heartland Bank for fourteen years to provide banking services for multiple bank accounts owned by the Hammonds.

10.      Founded in 1985 by Mr. Hammond, Hammond Associates was an investment advisory firm operating in Clayton, Missouri.  Mercer acquired Hammond Associates in January 2011.

11.      Hammond Associates employed Defendant Lewis from approximately 2002 through January 2011.  When Mercer acquired Hammond Associates, Defendant Lewis remained employed by Mercer until she left the company in mid-May 2011.

12.     Defendant Lewis was on Hammond Associates' payroll from 2002 through January 2011, Mercer's payroll from January 2011 through mid-May 2011, and was paid by the Hammonds from January 2011 through mid-May 2011.

13.     Defendant Lewis worked as finance administrator for Hammond Associates and assisted with the management of the Hammond family's finances.  As a finance administrator for the Hammond family, Defendant Lewis was responsible for tracking the Hammonds' personal finances and ensuring all appropriate bills were timely paid.

14.      In September 2007, the Hammonds added Defendant Lewis to Heartland Bank Account #1701 (the "Heartland Account"), and the Hammonds and Defendant Lewis signed a signature card for the Heartland Account.

15.      Defendant Lewis was added to the Heartland Account solely to enable her to perform her job duties of assisting the Hammonds with their personal finances.

16.     Soon after she was added to the Heartland Account, in October 2007, Defendant Lewis began fraudulently using the Heartland Account, without the Hammonds' authorization or knowledge, to transfer funds to her personal Wells Fargo bank account.

17.     Defendant Lewis increased her unauthorized transactions by using the Heartland Account and other bank accounts owned by the Hammonds to make payments to her PNC mortgage, Capital One credit card, and rent payments.  Defendant Lewis also utilized the Hammonds' Heartland Account to make miscellaneous unauthorized cash withdrawals, to write personal checks, and to make personal purchases.

18.      During her employment with the Hammonds, Defendant Lewis withdrew, without the Hammonds' authorization or knowledge, over $250,000.00 from a variety of the Hammonds' personal and business accounts, including the Heartland Account, Bank of America

account #0117, Southwest Bank account #4901, Southwest Bank account #4910, Southwest Bank account #2592, and Bank of St. Louis account #4410.

19.     Defendant Lewis' fraudulent activity was achieved through writing checks on the Hammonds' bank accounts, ATM withdrawals, miscellaneous unauthorized purchases, payments transfers directly to her bank accounts, and payments to her Capital One credit card.

20.     In April 2011, the Hammonds retained Defendant FSS to handle the Hammonds' personal financial matters and to replace Defendant Lewis.

21.     During this transition, between April 2011 and mid-May 2011, Defendant Lewis assisted Defendant FSS with the handling of the Hammonds' financial matters.

22.     Defendant Lewis stopped assisting with the Hammonds' finances on or about mid-May 2011.

23.     After her employment with Mercer and the Hammonds ended, the Hammonds removed Defendant Lewis from all bank accounts to which she had been added to during her employment.

24.     On or about August 3, 2011, the Hammonds, Heartland Bank, and Defendant FSS executed a new signature card for the Heartland Account, the effect of which was to invalidate and eliminate Defendant Lewis' access to the Heartland Account.

25.     Execution of a new signature for a bank account causes it to supersede and invalidate all prior signature cards.

26.     Despite Heartland Bank assisting the Hammonds in removing Defendant Lewis from the Heartland Account, Defendant Lewis continued, without the Hammonds' authorization or knowledge, to use the Heartland Account to make payments to her personal bank accounts.

27.     In the beginning of 2011, the Hammonds hired Defendant Mueller Prost to conduct an audit of their personal and business bank accounts.

28.     Defendant Mueller Prost reviewed the Hammonds' personal and business bank statements, bank reconciliations, wire transfers, scheduled payments, and credit card activity for the months of March, May, July, and December of 2010.

29.     During the period of the audit, Defendant Lewis had been employed to assist with the Hammonds' personal finances and made unauthorized payments to her Capital One credit card, PNC mortgage, rent to First Preston Management, transfers to her personal bank accounts, and various unauthorized withdrawals and purchases.

30.      In total, Defendant Lewis fraudulently and without authorization withdrew approximately $18,778.00 from the Hammonds' personal and business accounts during the months over which Defendant Mueller Prost conducted its audit's review.

31.     Indeed, Defendant Lewis was actively engaged in theft from the Hammonds during the period of the audit.  Despite the fraudulent activity that should have been readily discernible during the audit, Defendant Mueller Prost failed to report and identify irregularities in the Hammonds' financial statements and accounting controls.  Further, Defendant Mueller Prost affirmatively stated that the "accounting of the cash inflows and outflows were determined to be reasonable."

32.     Had Mueller Prost properly performed the audit and identified the fraudulent and unauthorized activity, the Hammonds would have been on notice of the fraud and would have prevented Defendant Lewis from taking an additional approximate $39,462.00 she withdrew without authorization between 2011 and 2014 from various bank accounts.  Additionally, the Hammonds would have promptly reported the unauthorized charges to the bank.

33.    On or about April 3, 2012, after she was no longer authorized to access the Hammonds' accounts, Defendant Lewis used the Heartland Account to make a payment of $2,883.15 on her Capital One credit card.

34.    On or about April 5, 2012, Defendant Lewis emailed Judy Gallaher, an employee of Defendant FSS, asserting that Jet Support Service, Inc. ("JSSI") charged $2,883.15 to her personal credit card.  Defendant Lewis maintained in the email that the charge was for an annual membership fee.  She explained that as a result of the JSSI charge she went online and paid her Capital One credit card in the amount of the charge out of the Heartland Account.  Defendant Lewis said that JSSI would send Defendant FSS an invoice for the charge and issue a refund check to Mr. Hammond for the same.

35.    None of these events happened with JSSI.  There are no annual membership fees and JSSI never charged such a fee to the Hammonds or to Defendant Lewis.

36.    As a result of this communication by Defendant Lewis to Defendant FSS, Defendant FSS was on notice Defendant Lewis was still accessing the Hammonds' Heartland Account in 2012 long after she was no longer authorized to access the Hammonds' accounts.

37.    Defendant FSS was also on notice that Defendant Lewis was using the Heartland Account to make unauthorized payments to her Capital One credit card.

38.    This payment should have been suspicious to Defendant FSS because Defendant Lewis no longer should have been accessing the Hammonds' Heartland Account for any reason.

39.    Defendant FSS never conducted any investigation as to Defendant Lewis' access to the Heartland Account or the claimed transaction with JSSI.

40.    Defendant FSS did not seek to confirm whether Mr. Hammond received a refund check in the amount $2,883.15.

7

41.    Defendant FSS did not inform the Hammonds that Defendant Lewis was still accessing the Heartland Account.

42.    Defendant FSS did not take steps to prevent further use of the Heartland Account by Defendant Lewis.

43.    After April 5, 2012, when Defendant FSS was on notice of Defendant Lewis' access to the Heartland Account, Defendant Lewis fraudulently and without authorization withdrew over $31,000.00 from the Hammonds' bank accounts.

44.    Defendant Lewis' fraudulent and unauthorized activity continued undetected until April 15, 2014, when Capital One contacted Defendant FSS and inquired whether a $1,000.00 third party payment from the Heartland Account to Capital One on March 17, 2014 was authorized.

45.    As a result of Capital One's inquiry, on April 21, 2014, Mrs. Hammond submitted a "Written Statement of Unauthorized Electronic (ACH) Debit" to Heartland Bank indicating that she did not authorize Capital One to debit her Heartland Account.

46.    At all relevant times, the Hammonds followed Heartland Bank's instructions and procedures for reporting the unauthorized and fraudulent transfer of funds from their account and requesting that Heartland Bank investigate the March 17, 2014 unauthorized and fraudulent transaction.

47.    Heartland Bank never properly investigated the Hammonds' dispute of the March 17, 2014 unauthorized and fraudulent transaction.

48.    The April 15, 2014 discovery of the unauthorized charge on the Heartland Account led the Hammonds to discover additional unauthorized charges in other personal and business accounts accessed by Defendant Lewis since 2007, totaling no less than $286,712.50.

8

49.     None of Defendant Lewis' withdrawals, transfers, or charges were authorized by the Hammonds.  The unauthorized withdrawals were fraudulent.

50.     As a result of Defendants' conduct,  the Hammonds have suffered damages and serious financial and pecuniary harm arising from monetary losses relating from the unauthorized electronic transfer from their bank accounts, and additional out-of-pocket expenses, all of which will continue in the future to the Hammonds' great detriment.

51.     At all times pertinent hereto, Defendants Mueller Prost, FSS, and Midland States were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants Mueller Prost, FSS, and Midland States.

## COUNT I
### (Breach of Contract- Midland States)

52.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

53.     By agreement, the Hammonds and Heartland Bank contracted that Heartland Bank would hold the deposited monies of the account of the Hammonds and permit payments and transfers from the Hammonds' Heartland Account only for authorized transactions.

54.     Heartland Bank breached its checking account and electronic funds agreement with the Hammonds by allowing unauthorized and fraudulent transfers from the Hammonds' Heartland Account.

55.     As a result of Heartland Bank's (and its successor-in-interest, Midland States') breaches, the Hammonds proximately suffered damages in an amount not less than $36,213.00.

WHEREFORE, the Hammonds pray for judgment against Defendant Midland States, Heartland Bank's successor-in-interest, in an amount that is fair and reasonable, for additional

award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT II
### (Negligence- Midland States)

56.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

57.      Heartland Bank owed a duty to its depositors, the Hammonds, to: exercise reasonable care in the handling the Heartland Account funds; to comply with reasonable commercial standards in the handling of their funds and bank accounts; to comply with its contractual duties with the Hammonds; and to notify the Hammonds of unauthorized transactions and suspicious account activity.

58.     Heartland Bank's acceptance of the debiting of the Heartland Account, allowing unauthorized electronic fund transfers from the Hammonds' Account, and other actions taken with respect to the Heartland Account, constituted a breach of Heartland Bank's duty of care to the Hammonds.

59.     Heartland Bank's breach of their duties to the Hammonds was a proximate cause of the Hammonds' damages.

60.     As a result of Heartland Bank's (and its successor-in-interest, Midland States') breach of its duty of care owed to the Hammonds, the Hammonds suffered damages in the amount not less than $36,213.00.

WHEREFORE, the Hammonds pray for judgment against Defendant Midland States, Heartland Bank's successor-in-interest, in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT III
### (Negligence *Per Se*- Midland States)

61.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

62.     The aforesaid unauthorized withdrawals were directly and proximately caused by the negligence *per se* of Heartland Bank.

63.     The Electronic Funds Transfer Act ("EFTA") is designed to protect public health, safety, and the general welfare of the public by establishing the rights and liabilities of consumers as well as the responsibilities of all participants in electronic funds transfer activities.

64.     The Hammonds are a member of the class of persons the EFTA is designed to protect.

65.     The Hammonds are "consumers" within the meaning of 15 U.S.C. § 1693a(6).

66.     The Hammonds maintained an "account" as defined in 15 U.S.C. § 1693a(2).

67.     Heartland Bank is an entity upon which the EFTA impose specific duties.

68.     Heartland Bank owed a duty under the EFTA to make only proper electronic transfers from the Heartland Account and to immediately refund or re-credit all amounts to the Hammonds that were debited from their Heartland Account as a result of unauthorized electronic funds transfers initiated by an unauthorized user.

69.     Heartland Bank failed to comply with its duties under the EFTA.

70.     By violating the EFTA, Heartland Bank breached the duties owed to the Hammonds as members of the class of persons intended to be protected by the EFTA.

71.     Heartland Bank's failure to comply with its duties under the EFTA constitutes negligence *per se*.

72.     The Hammonds were damaged by Heartland Bank's failure to comply with its duty under the EFTA.

73.     As a result of Heartland Bank's (and its successor-in-interest, Midland States') negligence *per se*, the Hammonds suffered damages in the amount not less than $36,213.00.

WHEREFORE, the Hammonds pray for judgment against Defendant Midland States, Heartland Bank's successor-in-interest, in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

<u>COUNT IV</u>
<u>(Violation of Missouri Merchandising Practices Act- Midland States)</u>

74.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

75.     The Hammonds are "consumers" under the Missouri Merchandising Practice Act ("MMPA").

76.     The Hammonds' Heartland Account is "merchandise" under the MMPA.

77.     The Hammonds' Heartland Account is for their personal and household use.

78.     Heartland Bank used deceit, fraud, false pretenses, false promises, misrepresentation, concealment, suppression, or omission of a material fact, or some combinations thereof, in connection its sale and/or advertisement of the Heartland Account to the Hammonds.

79.     The actions of Heartland Bank constitute unlawful and unfair practices within the meaning of the MMPA.  Such unlawful and unfair practices include, but are not limited to, Heartland Bank's representations to the Hammonds that it would provide services to them by properly managing and handling their funds in the Heartland Account, upon which

representation the Hammonds reasonably relied, and which services were not provided as represented.

80.     As a result of Heartland Bank's unlawful and unfair practices, the Hammonds suffered ascertainable loss of money or property.

81.     As a result of Heartland Bank's violation of the MMPA, the Hammonds are entitled to attorneys' fees and punitive damages.

82.     As a result of Defendants Heartland Bank's (and its successor-in-interest, Midland States') breach of the MMPA, the Hammonds suffered damages in the amount not less than $36,213.00.

WHEREFORE, the Hammonds pray for judgment against Defendant Midland States, Heartland Bank's successor-in-interest, in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT V
## (Professional Negligence-Mueller Prost)

83.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

84.     Defendant Mueller Prost was hired by, and owed a professional duty to, the Hammonds to perform the following: to carry out the audit of the Hammonds' bank accounts in accordance with generally accepted auditing standards; to identify and inform the Hammonds of fraudulent activity, red flags, and suspicious activity in their accounts; to report and identify irregularities in financial statements and accounting controls; to prepare an audit report with no material misstatements; and to comply with all contracts with the Hammonds.

85.     Defendant Mueller Prost reviewed the Hammonds' personal and business bank statements, bank reconciliations, wire transfers, scheduled payments, and credit card activity for the months of March, May, July, and December of 2010.  During these months, when Defendant Lewis was employed by the Hammonds, she made unauthorized payments to her Capital One credit card, to pay her PNC mortgage, to pay rent to First Preston Management, and she also made transfers to her personal accounts, and made various unauthorized withdrawals and purchases, all totaling not less than $18,778.00.

86.     Defendant Mueller Prost breached the duty it owed to the Hammonds by failing to discover and report material deficiencies in the Hammonds' bank accounts, including but not limited to, the unauthorized transfers and withdrawals by Defendant Lewis that occurred during the time period of the audit.

87.     Defendant Mueller Prost's breach of its duties to the Hammonds was a proximate cause of the Hammonds' damages.

88.     Had Mueller Prost identified the fraudulent and unauthorized, the Hammonds would have been on notice of the fraud and would have prevented Defendant Lewis from taking an additional approximate $39,462.00 she withdrew without authorization between 2011 and 2014 from various bank accounts.

89.     But for Defendant Mueller Prost's breach of the duty of care owed to the Hammonds, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continuing unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant Mueller Prost in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT VI
### (Breach of Contract-Mueller Prost)

90.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

91.     By an agreement, the Hammonds and Defendant Mueller Prost contracted for Defendant Mueller Prost to perform an audit of the Hammonds' personal and business accounts. Part of the express and/or implied terms to the agreement provided for Defendant Mueller Prost to notify the Hammonds of any fraudulent activity, red flags, or suspicious activity in any of the Hammonds' bank accounts.

92.     Defendant Mueller Prost breached its agreement by failing to detect fraudulent and unauthorized charges, withdrawals, and transfers during the months Defendant Mueller Prost reviewed the Hammonds' bank account information.

93.     Defendant Mueller Prost failed to detect approximately $18,778.00 Defendant Lewis fraudulently withdrew from the Hammonds' personal and business accounts during the months of the audit's review.

94.     As a result of Defendant's breach, the Hammonds were damaged.  Had Mueller Prost identified the fraudulent and unauthorized activity, the Hammonds would have been on notice of the fraud and would have prevented Defendant Lewis from taking an additional approximate $39,462.00 she withdrew without authorization between 2011 and 2014 from various bank accounts.

95.     But for Mueller Prost's breach of contract, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continuing unauthorized charges, and reported the fraudulent charges to the bank.

15

WHEREFORE, the Hammonds pray for judgment against Defendant Mueller Prost in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

**COUNT VII**
**(Breach of Fiduciary Duty-Mueller Prost)**

96.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

97.     A fiduciary duty existed between Defendant Mueller Prost and the Hammonds, as Defendant Mueller Prost in equity and good conscience was bound to act in good faith and with due regard to the interest of the Hammonds.

98.     Defendant Mueller Prost had control or influence over a portion of Plaintiff's property, finance, and/or business affairs.

99.     Based upon the relationship of trust and confidence of the parties, the Hammonds relied upon Defendant Mueller Prost to discern any issues with unauthorized transactions on their bank accounts.

100.    Defendant Mueller Prost breached its fiduciary duty to the Hammonds by failing to act in the Hammonds' interest in conducting an audit of the Hammonds' bank accounts and failing to detect Defendant Lewis' fraudulent, unauthorized withdrawals.  Defendant Mueller Prost failed to detect approximately $18,778.00 Defendant Lewis fraudulently and without authorization withdrew from the Hammonds' personal and business accounts during the months of the audit's review.

101.    As a direct and proximate cause of Defendant's breach, the Hammonds were damaged.

16

102.    Had Mueller Prost identified the fraudulent and unauthorized activity, the Hammonds would have been on notice of the fraud and would have prevented Defendant Lewis from taking an additional approximate $39,462.00 she withdrew without authorization between 2011 and 2014 from various bank accounts.

103.    But for Defendant Mueller Prost's breach of fiduciary duty, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continued unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant Mueller Prost in an amount that is fair and reasonable, for additional award of allowable punitive damages and allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT VIII
## (Negligent Misrepresentation-Mueller Prost)

104.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

105.    Defendant Mueller Prost represented to the Hammonds there was no suspicious activity concerning their bank accounts.

106.    Defendant Mueller Prost was acting in the ordinary course of its business in representing to the Hammonds no suspicious or fraudulent activity existed on their bank accounts.

107.    The Hammonds justifiably relied on the information provided by Defendant Mueller Prost that no suspicious or fraudulent activity existed on their bank accounts.

108.    Defendant Mueller Prost failed to detect approximately $18,778.00 Defendant Lewis fraudulently and without authority withdrew from the Hammonds' personal and business accounts during the months of the audit.

17

109.     Due to Defendant Mueller Prost's failure to exercise reasonable care, the information supplied to the Hammonds concerning any suspicious or fraudulent activity in their bank accounts was false.

110.     As a result of the Hammonds' reliance on Defendant Mueller Prost's representations, the Hammonds suffered pecuniary loss.  Had Mueller Prost identified the fraudulent and unauthorized activity, the Hammonds would have been on notice of the fraud and would have prevented Defendant Lewis from taking an additional approximate $39,462.00 she withdrew without authorization between 2011 and 2014 from various bank accounts.

111.     But for Defendant Mueller Prost's misrepresentations, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continuing unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant Mueller Prost in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT IX
## (Professional Negligence-FSS)

112.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

113.     Defendant FSS owed a professional duty to the Hammonds to: detect suspicious activity on the Hammonds' bank accounts; detect unauthorized transfers, withdrawals, and other transactions; and report to the Hammonds any use of the Hammonds' bank accounts by unauthorized users.

114.    Defendant FSS breached its duties by failing to discovery fraudulent and suspicious activity in the Hammonds' Heartland Account and failing to report known unauthorized use of the Hammonds' Heartland Account.

115.    Defendant FSS' breach of its duties to the Hammonds was a proximate cause of the Hammonds' damages.

116.    After Defendant FSS was on notice of Defendant Lewis' access to the Heartland Account, Defendant Lewis fraudulently and without authorization withdrew over $31,000.00 from the Hammonds' bank accounts.

117.    But for FSS' breach of the duty of care owed to the Hammonds, the Hammonds would have been on notice of Defendant Lewis' fraudulent and unauthorized withdrawals, stopped the continuing unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant FSS in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT X
### (Breach of Contract-FSS)

118.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

119.    By agreement, the Hammonds and Defendant FSS contracted for Defendant FSS to handle financial matters for the Hammonds, including monitoring the Hammonds' Heartland Account for fraudulent or suspicious activity.

120.    Defendant FSS breached its agreement by failing to detect and/or report fraudulent and unauthorized charges, withdrawals, and transfers.

121.    After Defendant FSS was on notice of Defendant Lewis' access to the Heartland Account, Defendant Lewis fraudulently and without authorization withdrew over $31,000.00 from the Hammonds' bank accounts.

122.    As a result of Defendant FSS' breach, the Hammonds sustained and continue to sustain losses and damages. But for Defendant FSS' breach, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continuing unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant FSS in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT XI
### (Breach of Fiduciary Duty-FSS)

123.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

124.    A fiduciary duty existed between Defendant FSS and the Hammonds, as Defendant FSS was in equity and good conscience bound to act in good faith and with due regard to the Hammonds' interests.

125.    Defendant FSS had control or influence over a portion of the Hammonds' property, finances, and/or business affairs.

126.    Based upon the relationship of trust and confidence of the parties, the Hammonds relied upon Defendant FSS to discern any issues with unauthorized transactions on the Heartland Account.

127.     Defendant FSS breached its fiduciary duty to the Hammonds by failing to act in the Hammonds' interest in monitoring the Hammonds' bank accounts, by failing to detect

Defendant Lewis' fraudulent and unauthorized withdrawals, and by failing to report known unauthorized use of the Heartland Account by Defendant Lewis.

128.    As a direct and proximate cause of Defendant FSS' breach, the Hammonds were damaged.

129.    After Defendant FSS was on notice of Defendant Lewis' access to the Heartland Account, Defendant Lewis fraudulently and without authorizations withdrew over approximately $31,000.00 from the Hammonds' bank accounts.

130.    As a result of Defendant FSS' breach of fiduciary duty, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continuing unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant FSS in an amount that is fair and reasonable, for additional award of allowable punitive damages and allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT XII
### (Negligent Misrepresentation-FSS)

131.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

132.    Defendant FSS represented to the Hammonds there was no suspicious activity concerning the Heartland Account.

133.    Defendant FSS was acting in the ordinary course of its business in representing to the Hammonds there was no suspicious or fraudulent activity concerning the Heartland Account.

134.    The Hammonds justifiably relied on the information provided by Defendant FSS that there was no suspicious or fraudulent activity concerning the Heartland Account.

135.     Due to Defendant FSS' failure to exercise reasonable care, the information supplied to the Hammonds concerning any suspicious or fraudulent activity in the Heartland Account was false.

136.     As a result of the Hammonds' reliance of Defendant FSS' statements, the Hammonds suffered a pecuniary loss.  After Defendant FSS was on notice of Defendant Lewis' access to the Heartland Account, Defendant Lewis fraudulently and without authorizations withdrew over approximately $31,000.00 from the Hammonds' bank accounts.

137.     But for Defendant FSS's misrepresentations, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continued unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant FSS in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

### COUNT XIII
### (Fraudulent Misrepresentation-FSS)

138.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

139.     Defendant FSS intentionally provided false information, consisting of affirmative misstatements about the Hammonds' Heartland Account and omissions regarding the suspicious activity in the Hammonds' Heartland Account.

140.     Defendant FSS represented to the Hammonds there was no suspicious or fraudulent activity in the Hammonds' Heartland Account, despite having knowledge Defendant Lewis, an unauthorized user, was accessing the Heartland Account.

141.     The foregoing representations by Defendant FSS to the Hammonds were false.

142.     The foregoing representations by Defendant FSS to the Hammonds were material.

143.     Defendant FSS knew or should have known of the falsity or ignorance of truth in its misrepresentations to the Hammonds.

144.     Defendant FSS intended the Hammonds to rely on its representations.

145.     The Hammonds reasonably relied upon Defendant FSS to discern any issues with unauthorized transactions on their bank accounts and reasonably relied on the representations of no suspicious or fraudulent activity as being true.

146.     As a result of the Hammonds' reliance on Defendant FSS' misstatements about the Account, the Hammonds were injured.  After Defendant FSS was on notice of Defendant Lewis' access to the Heartland Account, Defendant Lewis fraudulently and without authorization withdrew over approximately $31,000.00 from the Hammonds' bank accounts.

147.     But for Defendant FSS' misrepresentations, the Hammonds would have been on notice of Defendant Lewis' fraud, stopped the continuing unauthorized charges, and reported the fraudulent charges to the bank.

WHEREFORE, the Hammonds pray for judgment against Defendant FSS in an amount that is fair and reasonable, for additional award of allowable punitive damages and allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT XIV
### (Fraud-Lewis)

148.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

149.     Defendant Lewis represented to the Hammonds that any assistance she provided concerning their bank accounts would be provided honestly and fairly.

150.     During all times relevant to the allegations of this Complaint, Defendant Lewis acted unfairly, dishonestly, and with the intent to defraud the Hammonds of monies in the accounts by instituting unauthorized transfers, conducting ATM withdrawals, drafting unauthorized checks, making fraudulent misrepresentations, and engaging in other fraudulent activity with respect to the bank accounts.

151.     Defendant Lewis intended for the Hammonds to rely on her false representations concerning her access and use of the Hammonds' bank accounts. The Hammonds reasonably relied on Defendant Lewis to monitor, handle, and access their bank accounts.

152.     Defendant Lewis' representations to the Hammonds were false.

153.     The aforesaid actions by Defendant Lewis were intentionally concealed from the Hammonds and Defendant Lewis knew or should have known that such actions were false and deceitful when taken.

154.     None of the funds appropriated from the Hammonds' bank accounts by Defendant Lewis evidenced a valid obligation by the Hammonds to Defendant Lewis.  At the time Defendant Lewis withdrew funds from the Hammonds' bank accounts, she knew or should have known that such funds did not represent a valid obligation of the Hammonds to her and that the funds in the bank accounts were property of the Hammonds.

155.     The Hammonds did not know of the falsity of Defendant Lewis' representations and had a right to rely on the truth of her representations.

156.     Without authorization, Defendant Lewis withdrew approximately $286,712.50 from the Hammonds' bank accounts from October 2007 until March 2014.

157.    As a direct and proximate result of the aforesaid acts of misrepresentation, fraud, concealment, and deceit by Defendant Lewis, the Hammonds have been damaged in a sum of not less than $286,712.50.

WHEREFORE, the Hammonds pray for judgment against Defendant Lewis in an amount that is fair and reasonable, for additional award of allowable punitive damages and allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT XV
### (Breach of Fiduciary Duty- Lewis)

158.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

159.    A fiduciary duty existed between Defendant Lewis and the Hammonds, as Defendant Lewis was in equity and good conscience bound to act in good faith and with due regard to the Hammonds' interest.

160.    Defendant Lewis had control or influence over a portion of the Hammonds' property, finances, and/or business affairs.

161.    Defendant Lewis breached her fiduciary duty to the Hammonds by failing to act in the Hammonds' interest in accessing and handling the Hammonds' bank accounts.

162.    Based upon the relationship of trust and confidence of the parties, the Hammonds relied upon Defendant Lewis to handle the Hammonds' monies and bank accounts.

163.    As a direct and proximate cause of Defendant Lewis' breach, the Hammonds were damaged in amount no less than $286,712.50.

WHEREFORE, the Hammonds pray for judgment on Count of their complaint against Defendant Lewis in an amount that is fair and reasonable, for additional award of allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## COUNT XVI
### (Conversion-Defendant Lewis)

164.     All preceding paragraphs are incorporated by reference as though fully set forth

herein.

165.     Without authorization, Defendant Lewis assumed the rights of ownership over the

Hammonds' personal property to the exclusion of the Hammonds.

166.     Defendant Lewis took the unauthorized checks, ATM withdrawals, unauthorized

transfers, and any and all other funds withdrawn from the bank accounts without authority and

with the intent to, and did, deprive the Hammonds of possession thereof.

167.     The funds taken by Defendant Lewis are specific and identifiable.

168.     Defendant Lewis' foregoing actions deprived the Hammonds of their right to

possession.

169.      The proceeds from the unauthorized checks, ATM withdrawals, and unauthorized

transfers from the Hammonds' bank accounts were the property of the Hammonds.

170.     As a direct and proximate cause of Defendant Lewis' conversion of the

Hammonds' property, the Hammonds were damaged in amount no less than $286,712.50.

WHEREFORE, the Hammonds pray for judgment against Defendant Lewis in an amount

that is fair and reasonable, for additional allowable attorney's fees, for costs, and for any other

relief that to the Court seems proper.

## COUNT XVII
### (Replevin- Lewis)

171.     All preceding paragraphs are incorporated by reference as though fully set forth

herein.

172.    Without authorization, Defendant Lewis assumed the rights of ownership over the Hammonds' personal property to the exclusion of the Hammonds.

173.    Defendant Lewis took the unauthorized checks, ATM withdrawals, unauthorized transfers, and any and all other funds withdrawn from the bank accounts without authority and with the intent to, and did, deprive the Hammonds of possession thereof.

174.    The funds taken by Defendant Lewis are specific and identifiable.

175.    Defendant Lewis' foregoing actions deprived the Hammonds of their right to possession.

176.     The proceeds from the unauthorized checks, ATM withdrawals, and unauthorized transfers from the Hammonds' bank accounts were the property of the Hammonds and the Hammonds are entitled to immediate possession of the same.

177.    As a direct and proximate cause of Defendant Lewis' unauthorized possession of the Hammonds' property, the Hammonds were damaged in amount no less than $286,712.50.

WHEREFORE, the Hammonds pray for judgment against Defendant Lewis in an amount that is fair and reasonable, for additional allowable attorney's fees, for costs, and for any other relief that to the Court seems proper.

## JURY DEMAND

The Hammonds hereby demand a jury trial on all issues so triable.

Respectfully submitted,

ELIAS GUTZLER SPICER LLC

By:  /s/ Greg G. Gutzler           .
Richard M. Elias, E.D.Mo.# 118567MO
relias@egslitigation.com
Greg G. Gutzler, E.D.Mo. # 48893MO
ggutzler@egslitigation.com
1924 Chouteau Avenue, Suite W
St. Louis, MO 63103
(314) 833-6645


*Attorneys for Plaintiffs*

## VERIFICATION

I hereby declare under penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Shelia Hammond
Shelia Hammond

Aug 2, 2015

## **VERIFICATION**

I hereby declare under penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

_____                    Aug 2, 2015
Dennis R. Hammond